IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                   Cr. No.  24-20145-JTF

LISA FINDLEY,

      Defendant.

**DEFENDANT'S POSITION WITH
REGARD TO PRESENTENCE INVESTIGATION REPORT**

Comes now the defendant through appointed counsel pursuant to Rule 32 of the Federal Rules of Criminal Procedure and Local Criminal Rule 32.1 and submits the following with respect to sentencing in this case.

**I. Defense Counsel Certification:**

Counsel received Ms. Findley's presentencing report ("PSR").  A copy of the report has been provided to Ms. Findley for her review.  The contents of the PSR have been discussed with Ms. Findley.

**II. The Sentencing Hearing**

Given the status of this matter, it is likely that the sentence hearing will require approximately two (2) hours to complete.

Ms. Findley has many clarifications and objections to items contained in the PSR that will require some time for consideration by the Court. Some of the clarifications are submitted so that the Court will have the proper context for the contents of the PSR. Other clarifications provide additional information that Ms. Findley believes will assist the Court with its analysis of the 18 U.S.C.A §3553(a) factors ("3553(a) factors"). Many of the clarifications and some of the objections have no impact on the sentencing guideline calculations. Some of the objections, as outlined in the legal objection section below, impact on the sentencing guideline calculations that the Court must determine before moving to the 3553(a) factors.

**III. Clarifications and Factual Objections.**

Ms. Findley is not known by or used the alias Lisa Jannine Findley, Lisa Jeanne Findley, Lisa Finley, Lisa Jeanne Holden, Lisa Holben, Lisa Howell, Gregory Naussany, Kurt Naussany, Lisa Jeannine Sullins or Carolyn Williams.

Ms. Findley does not share a residence with her sister or her brother. It is important to note that Ms. Findley specifically requested that the interviewing probation officer not contact her sister to confirm information about her background. Ms. Findley explained that she and her sister have a strained, complex and difficult relationship and instructed the probation officer to contact her brother to verify background information provided. As a result of the probation officer's blatant disregard for Ms. Findley's request, the PSR is replete with inaccurate information attributed to comments from her sister. The Court should not take this issue lightly.

The information contained in the PSR follows the defendant around like a birth certificate in the Bureau of Prisons and can be used by other law enforcement agencies. Therefore, the information must be accurate and reliable.  At the heart of this process is the understanding that the defendant will participate willingly and openly so that the Court can have a better understanding of the person the Court is to sentence.  Should an individual decide that they do not want something in their PSR that is considered voluntary information, it should remain out of the PSR.  The Court has an expectation that the information contained in the PSR as gathered by the probation officer is going to be reliable and free from biases whether implicit or explicit.  Defendants have the same expectations when dealing with voluntary information.

When a probation officer decides to ignore the expressed directive of a defendant not to contact a person and then places that person's comments, opinions and statements in the PSR, the probation officer's actions become counterproductive to this process.  It can cause a person to believe that the Court has formed an opinion of the person based on the erroneous information.  That belief may be erroneous, but the erroneous belief still occurs.  It can cause a person to shut down and not participate in the proceedings when participating can be beneficial.

The sister is not professionally qualified to make any of the comments she made that the probation officer saw fit to include in the PSR.  The sister's statements and comments are littered thorough the PSR as if this document was written about the sister.  Ms. Findley instructed the probation officer not to contact or speak with her

sister because of the nature of their relationship. The probation officer has no basis for believing that any of the information that the sister provided is reliable other than what the sister alleges happened to herself. Ms. Findley hereby objects to those comments, opinions and statements and requests that the Court order them removed from the PSR. Ms. Findley further requests that the Court not consider the information attributed to comments, opinions or statements from the sister during the sentence hearing. Those comments are found in the PSR at paragraphs 101, 103, and 109 and 117.

**Paragraph 4** – Ms. Findley offers the following clarifying information for the first bullet point of paragraph 4. She was being placed in involuntary protective custody due to no fault of her own. The PSR fails to reference the reasoning she was placed in involuntary protective custody as well. Ms. Findley submits that she was being targeted by other detainees as a potential victim of violence. The Shelby County Division of Corrections ("SCDC") officers were aware of the threats and the origin of the threats; however, the SCDC chose to remove Ms. Findley to a very restrictive housing environment instead of the other detainees responsible for targeting her. She viewed the actions of SCDC as racially motivated because the detainees targeting her were of a different race than she is. Additionally, the SCDC officers removing her to the more restrictive housing environment were of the same race as the detainees threatening her with acts of violence. She Findley denies referring to the officers by their race but admits that she referred to them as "racist ass bitches."

Ms. Findley offers the following clarifying information for the second bullet point of

paragraph 4. She has had continuous and consistent health issues since arriving at SCDC. On this occasion, she had previously been seen by medical staff at SCDC and received a laxative. The laxative was working as it should at that time. She feared losing control of her body functions so she went to the restroom.

**The Offense Conduct –**

To the extent that any information contained in the offense conduct portion of the PSR in paragraphs 6 – 54 exceed the stipulation made in open court at the change of plea hearing by Ms. Findley, Ms. Findley offers no admissions to that information and remains silent regarding those paragraphs. Ms. Findley accepts responsibility for her involvement in this matter and is unwavering in that fact despite the information that the Court shared with the parties in D.E. 66.

Paragraphs 56, 59, 67 & 70.

Ms. Findley objects to the adjustment for obstruction of justice and the related two (2) level increase pursuant to USSG §3C1.1 and the omission of credit for acceptance of responsibility at paragraph 70 as addressed below.

Other Criminal Conduct and Other Arrests

Paragraph 87 – 94 and 96 – 98.

Ms. Findley objects to the inclusion and use of the matters contained in this section of the PSR that were dismissed and/or expunged. Many of the paragraphs contain the language "The circumstances for this case are not available." Ms. Findley requests that Court have the matters removed from the PSR and not consider them in this matter

because they lack reliability.

Paragraph 116 & 117

Ms. Findley submits that those responsible for the statements made at paragraphs 116 & 117 are not qualified to render the opinions that the probation officer recorded in the PSR. As such, she objects to the inclusion of the material and requests that the Court not rely on the information presented. Additionally, Ms. Findley reiterates that she specifically requests that the probation officer not contact her sister in this matter to verify the background information. The probation officer completely ignored her request.

Paragraph 123

Ms. Findley makes the following clarification regarding the certificates she earned. Ms. Findley submits that she received certifications from those programs and did not obtain any professional licenses. The probation officer misconstrues the notion that a certification and a license are the same things.

**IV. Legal Objections.**

**Ms. Findley objects to the guideline calculations at paragraphs 62, 63, 64, 67 and 70.**

**1.** Paragraph 62 – Ms. Findley submits that the intended loss amount in this matter is overstated.

Pursuant the sentencing guidelines "intended loss" (I) means the pecuniary harm that the defendant purposely sought to inflict; and (II) includes intended pecuniary

harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value). See, USSG § 2B1.1(b)(1) – Notes to Table (C)(ii).  When calculating intended loss, the question for the Court is "what would the loss have been if the defendant had not gotten caught?" (See, United States Sentencing Commission – Loss Calculation under §2B1.1 Primer) [1] This is the appropriate inquiry because the guidelines consider loss from a subjective intent.  Id at p.5.

When determining loss under subsection (b)(1), courts need only make a reasonable estimate of the loss. USSG §2B1.1, app. n. 3(B) (2024).  "The estimate of the loss shall be based on available information, taking into account, as appropriate and practicable under the circumstances, factors such as the following: … [m]ore general factors, such as scope and duration of the offense and revenues generated by similar operations.  Id. at 3(B)(vi).

Under the economic reality principle, when intended loss amounts include intended pecuniary harm that are so irrational that it is impossible or unlikely to occur, then a downward departure or variance is appropriate.  *U.S. v. McBride*, 362 F.3d 360, 374-377 (6th Cir. 2004).

In the case at bar, based on all the available information there is no intended loss to be attributed to offense of conviction.  The scheme was very short in duration with a very limited scope that generated no revenue from any similar operations.  Most

---

[1] Primer on Loss Calculation Under §2B1.1

importantly, the Court must be reminded that there was a withdrawal of the creditor claim as outlined in the PSR at paragraph 48.  Therefore, the defense objects to the loss amount included in the PSR.  It is the position of the defense that the intended loss amount should be zero.

Additionally, this outrageously concocted scheme was, to quote Marvin Gaye, "doomed from the start." M. Gaye, *Is That Enough*, *on Here My Dear* (Tamla Records 1978).  Its doom was apparent given the number of attorneys representing the estate of the deceased, the scrutiny that any creditor claim against this estate would undergo, and the fact that the property in question was held in a trust with its own issues.  These factors make it irrational to believe that any creditor claim filed against the estate of the deceased involving this property for any dollar amount would provide a cash settlement to anyone.  Therefore, should the Court deem that some amount is appropriate for an intended loss amount based on the evidence, the defendant request a downward departure or variance based on the economic reality principle as established in the Sixth Circuit in *McBride*.

**2.**  Paragraph 63 – Ms. Findley submits that the offense did not otherwise involve sophisticated means and that she did not intentionally engage in or caused the conduct constituting sophisticated means.

The sentencing guidelines suggest a two-level enhancement is appropriate if the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means.  See, USSG

8

§2B1.1(b)(10)(C). The Sixth Circuit defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *United States v. Betro,* 115 F.4d 429, 456 (6th Cir. 2024) (quoting *United States v. Simmerman*, 850 F.3d 829, 833 (6th Cir. 2017) (quoting U.S.S.G. § 2B1.1 cmt. n.9)). The Sixth Circuit has established the standard of review for the sophisticated means analysis as a "the totality of a defendant's conduct—the entire scheme"—as sufficient for a determination of sophisticated means. *Id.* at p. 456.

In this matter, the "***sophisticated means***" enhancement is inapplicable. Ms. Findley is convicted of mail fraud. Looking at the totality of the conduct involved, the scheme was not complex or especially intricate. The offense did not involve any hidden assets or transactions. Despite the colorful manner that the indictment was written the offense boiled down to this: A creditor claim was filed in an estate. Communications with the attorneys for the estate were made. The supporting documentation, including a false promissory note and deed of trust, for the creditor claim was manufactured using a business name and a false notary stamp. The false documents were placed in the mail. Newspaper publications were made. The claim was withdrawn. The business names involved were linked to Ms. Findley directly. The modes of communication with all parties were linked to Ms. Findley directly. Although, the situation may have been newsworthy given the estate involved, it was in no way committed using "sophisticated means" as defined by the sentencing guidelines. The enhancement is not appropriate.

3.  Paragraph 67 - Ms. Findley submits that application of the two (2) level

9

enhancement for obstructing or impeding the administration of justice is unwarranted.

The sentencing guidelines increase the offense level by two (2) points if a defendant (1) willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct. USSG §3C1.1.

The probation officer alleges that the enhancement is appropriate because of the information contained in the PSR at paragraphs 50 and 51. The defense submits that this action is not sufficient to support the enhancement. A careful review of the materials suggests that a criminal investigation into the matter had not begun at the time of paragraph 50. The information in paragraph 51 urged law enforcement to conduct a more thorough investigation into the matter. The defendant is charged in the indictment with aiding and abetting others known and unknown to the Grand Jury. As such, the suggestions in the materials that law enforcement do a more thorough investigation and look at others is not obstructive behavior. This information should not be considered material to the investigation of the defendant after the investigation began.

The probation officer also asserts that the conduct outlined in paragraph 53-54 of the PSR supports the enhancement. The defense submits that this conduct does not rise to obstruction either. The conduct occurred after the arrest. The property discussed remained at the premises and was never removed until law enforcement seized it after

the second search of the premises. The agencies executing the search warrant were never prevented from searching the premises and anywhere they chose to search at that time. There were no instructions provided for anyone to destroy the items that the agents overlooked during the first search of the premises. The same items were seized during a subsequent search of the premises. It should be noted that no person is required to reveal the location of item located in their home that law enforcement may be searching for during a search conducted pursuant to a search warrant. The law enforcement agency with the search warrant has authority to search every nook and cranny of a home with a properly obtained warrant. The fact that the law enforcement agency conducting the search failed to discover the items does not rise to the level of obstruction by the defendant. Additionally, requesting that a phone service be deactivated does not remove the contents from the telephones that were seized. It stops the obligation to pay the monthly costs for the phone service. That does not rise to the level of obstruction.

 **4.** Ms. Findley joins the Government in its objection to the omission of acceptance of responsibility credit as suggested in paragraph 70.

 V. Recommended Sentence:

The defense is going to recommend a sentence that is sufficient but not greater than necessary pursuant to the 18 U.S.C.A. §3553(a) factors as will be explained and discussed more fully at the sentence hearing. The defense reserves the right to amend this position as appropriate.

Respectfully submitted,

TYRONE J. PAYLOR
FEDERAL PUBLIC DEFENDER

s/Tyrone J. Paylor
Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN 38103
(90) 544-3895

**CERTIFICATE OF SERVICE**

I, Tyrone J. Paylor, certify that a true copy of the foregoing Defendant's Position with Regard to Sentencing Factors was forwarded via the Court's electronic filing system to the Assistant United States Attorney assigned this matter.

THIS the 17th day of September 2025.

s/Tyrone J. Paylor
Federal Defender